UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

NICHOLAS DONADIO,

    PlaintiffPlaintiff,

v.

GLOBAL EXPERIENCE SPECIALISTS, INC., *et al.*,

    DefendantsDefendant.

Case No. 2:11-CV-00317-KJD-CWH

**ORDER**

    Before the Court is the Motion for Summary Judgment (#21) filed by Defendant Global Experience Specialists, Inc. ("GES" or Defendant). Plaintiff has filed an opposition (#25) and Defendant has filed a reply (#29).

I.  Background

    The parties do not dispute the following facts:

    Plaintiff, who was born in 1949, was hired by GES in 2004. Plaintiff worked in the Exhibit and Design department ("E&D") at GES and was promoted to Account Manager Supervisor ("AMS") in 2007. In August of 2008, Scott Filip was also promoted into an AMS position.

1   In their year-end evaluations, both employees received ratings of "effective" or "highly
2   effective" in all categories in their Employee Performance Appraisals. Filip received high marks in
3   all his previous appraisals and had been promoted twice since joining GES in 2005.

4   In 2008-2009, GES undertook a $20 million dollar project to revamp show site and financial
5   computer software into a system called "CORE." Both Plaintiff and Filip received training on the
6   CORE system. Filip's performance evaluation noted that he "jumped in learning CORE to assist
7   with implementation and develop new procedures where we lack structure." Filip was designated as
8   a "super user" which meant he was the point person for CORE in the E&D department and was
9   tasked with helping fellow employees with CORE related issues.

10   Plaintiff told his supervisor Fred Carney, that he was not interested in becoming a "super
11   user" on the CORE system, that he was more interested in being a "team builder," and believed Filip
12   should be "the computer guy."

13   In July, 2009, GES had three employees in the AMS position in the E&D department.
14   Plaintiff, age 59, and Filip, age 27, were based in Las Vegas. A third AMS, aged 56, was based in
15   Chicago. The economic downturn during this period significantly reduced the revenues of the E&D
16   department. Carney was told by his supervisor Greg Dickson, that they would have to eliminate one
17   AMS position. Carney and Dickson chose to lay off Plaintiff.

18   On July 27, 2009, Plaintiff was away from work when he heard from a co-worker that GES
19   had laid off a number of employees. Plaintiff spoke by phone with Carney, who informed that he
20   had been laid off. Later, Plaintiff met with Carney and a human resources representative to discuss
21   the layoff. Carney explained to Plaintiff that he needed an employee who would champion the
22   CORE system and that Filip had picked up the system a lot faster. At the time, Plaintiff told Carney
23   that he would have made the same decision. Plaintiff later said this comment was an attempt to
24   "calm the situation and walk away with a little dignity."

25
26

In total, about 190 GES employees were laid off in a series of layoffs in 2009. Thirty employees in the E&D department were laid off and all but two of these were younger than Plaintiff. Seventy-three percent of the laid-off employees were under 50 and 26% were under 40.

II.  Discussion

    A. Standard for Summary Judgment

Summary judgment shall be granted if there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of showing the absence of a genuine dispute of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual dispute for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e).

All justifiable inferences must be viewed in the light must favorable to the nonmoving party. See Matsushita, 475 U.S. at 587.  However, the nonmoving party must produce specific facts, by affidavit or other evidentiary materials similar to those described in Rule 56, to show that there is a genuine dispute for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  Summary judgment motions can only be defeated by admissible evidence.  In re: Oracle Corporation Securities Litigation, 627 F.3d 376, 385 (9th Cir. 2010). "A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." Nilsson v. City of Mesa, 503 F.3d 947, 952 n. 2 (9th Cir. 2010) (citation omitted). An affidavit that contradicts the plaintiff's own deposition testimony is not sufficient to defeat summary judgment. Orr v. Bank of America, 285 F.3d 764, 780 n. 28 (9th Cir. 2002).  Furthermore, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruing on a motion for summary judgment."  Scott v. Harris, 550 U.S. 372, 380 (2007)

Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 248.

### B. Burden Under ADEA and N.R.S. § 613.330

The ADEA makes it "unlawful for an employer ... to discharge any individual ... because of such individual's age." 29 U.S.C. § 623(a). This prohibition is "limited to individuals who are at least 40 years of age." § 631(a).  N.R.S. § 613.330 affords similar protection.[1]  Because there is no direct evidence of discrimination, this case falls within the familiar burden shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under McDonnell Douglas, the burden is on the plaintiff to make out a prima facie case of unlawful discrimination.  If the plaintiff meets this burden, the defendant is required to articulate a legitimate, non-discriminatory reason for the adverse employment action.  If the employer satisfies its burden, the burden then returns to the employee to show that the reason advanced by the employer constitutes mere pretext for unlawful discrimination.  Id.

To make a prima facie case, a plaintiff must demonstrate that he was: 1) over 40 years old; 2) performing his job satisfactorily; 3) discharged; and 4) replaced by a substantially younger person. Coleman v. Quaker Oats Co., 232 F.3d 1271, 1280–81 (9th Cir.2000) (citing Nidds v. Schindler Elevator Corp., 113 F.3d 912, 917 (9th Cir.1997).  "The requisite degree of proof necessary to establish a prima facie case for ... ADEA claims on summary judgment is minimal." Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir.1994). The parties presume for purposes of this Motion that Plaintiff can establish a prima facie case of discrimination.

GES, in articulating a reason for Plaintiff's termination, asserts that economic conditions necessitated the layoffs and that Carney and Dickson selected Plaintiff because Filip had greater abilities with the CORE software program.  This is a legitimate, non-discriminatory reason for

---

[1] Claims under N.R.S. § 613.330 are analyzed according to federal anti-discrimination law.  See Apececche v. White Pine Co., 96 Nev. 723, 726-27 (1980).

4

terminating Plaintiff. At trial, the burden would be on Plaintiff to show Defendant's proffered explanation is pretext and that his termination was actually motivated by his age.

Plaintiff explicitly states that he "does not offer direct evidence" of discrimination. Plaintiff also asserts that this case is "not about statistics," but the "binary" decision to lay off Plaintiff rather than Filip. Accordingly, in order to prevail on summary judgment, Defendant must demonstrate that the undisputed facts, when viewed in the light most favorable to Plaintiff, show that the reason for terminating Plaintiff offered by Defendant was not pretext for unlawful discrimination.

C.  Pretext

1. Comments by Non-Decision Makers

Stray remarks not acted upon or communicated to a decision maker are insufficient to establish a dispute of fact about pretext. See Nidds v. Schindler Elevator Corp., 113 F.3d 912, 919 (9th Cir.1996) (holding that a comment by a supervisor that he intended to get rid of all the "old timers" was insufficient to create a genuine issue of material fact because "the comment was not tied directly to [the] layoff."). If an agent was not involved in the employment decision, his biased remarks are not admissible to show discriminatory animus. See, e.g., Mondero v. Salt River Project, 400 F.3d 1207, 1213 (9th Cir.2005) (affirming summary judgment for employer in gender discrimination claim; foreman's biased comments are not sufficient to raise an inference of discriminatory animus where he was not involved in the employment decision).

Carney and Dickson were responsible for the decision to lay off Plaintiff. Plaintiff seeks to show pretext by alleging that during the course of his employment, Brian Newman, Dennis Christensen, and Terry Mazarchuk made disparaging comments about his age. Because these men were not involved in the employment decision, their statements do not create a dispute of fact on the issue of pretext.[2]

---

[2] Plaintiff alleges that Brian Newman is "believed to have played a role" in the decision. This unsupported statement is insufficient to create an issue of fact.

Plaintiff also alleges that after he was laid off, GES Vice President David Clontz "admitted to me that GES was keeping Scott [Filip] because he was the younger guy and that Scott was paid less." Clontz denies making this statement. Plaintiff acknowledges that Clontz was not involved in the decision to terminate Plaintiff. Further, Plaintiff first recounted this statement in his affidavit in opposition to this Motion. Neither his thorough deposition, nor various filings with Nevada Equal Rights Commission contain any reference to Clontz's alleged remarks. This self-serving, uncorroborated affidavit testimony is not sufficient to create an issue of fact regarding pretext.

Defendant cites an affidavit by Doris Hart stating that Plaintiff told her that he only had two years left before retirement and, in her estimation, Plaintiff did not put much effort into learning the CORE system or assisting those under him to learn it. Plaintiff claims that this statement is false.[3] The truth of Ms. Hart's statement does not affect summary judgment because there is no evidence that it has a nexus to the employment decision and it is undisputed that Filip was more proficient at CORE than Plaintiff.

### 2. Criteria for Carney and Dickson's Decision

"The ADEA does not make it unlawful for an employer to do a poor job of selecting employees. It merely makes it unlawful to discriminate on the basis of age." Cotton v. City of Alameda, 812 F.2d 1245, 1249 (9th Cir.1987. Evidence that a defendant made unwise business judgments or that it used a faulty evaluation system does not support the inference that the defendant discriminated on the basis of age. Coleman v. Quaker Oats Co., 232 F.3d 1271, 1285 (9th Cir. 2000) To determine whether a defendant had an improper motive, "[t]he question is not whether [defendant] in the abstract had better qualifications than the other candidates. The question is whether the other candidates are more qualified with respect to the criteria that [defendant] actually employ[ed]" in making the decision. Cotton, 812 F.2d at 1249.

---

[3] The motion disrespectfully describes Ms. Hart's statement in her sworn affidavit as a "bald-faced lie." Plaintiff's counsel is advised that dramatic and overwrought language of this type, which appears throughout the Opposition, is not helpful to the Court in deciding the issues.

### a. CORE Proficiency

Defendant provides testimony from Carney that the factor used to determine who would be retained was which employee would be a "champion" for GES's new CORE system. Defendant had invested approximately $20 million in this system. Unlike Plaintiff, Filip had been designated a CORE "super user," was the point person for the E&D department, and had received commendation for his willingness to "jump[] in learning CORE to assist with implementation and develop new procedures where we lack structure." Filip had been involved in training other employees in Las Vegas and Los Angeles on CORE. In contrast, Plaintiff told Carney that "he did not want to be the system person," that he was the "team builder," and Filip could be the "computer guy."[4]

It is undisputed that CORE was an expensive and important undertaking at GES and that Filip had greater proficiency with the CORE system. Plaintiff testified in his deposition that CORE was a "huge deal" in the company and that at the time of the layoff "the plan was to still go with CORE," despite some technical problems with the program. Plaintiff now contradicts his former testimony by arguing that CORE could not have been an important factor because it was doomed to failure. Plaintiff also alleges that GES eventually suspended CORE after he was laid off. This contradictory, inadmissible, and self-serving testimony does not create an issue of fact. Plaintiff has provided nothing to show a genuine dispute of fact about whether CORE proficiency was the criteria Defendant actually employed in making the decision or about whether Filip met the criteria.

### b. Performance

Courts will not infer pretext from the simple fact that an employer had two different, although consistent, reasons for laying off an employee. Aragon v. Republic Silver State Disposal, Inc., 292 F.3d 654, 661 (9th Cir.2002); see also Diaz v. Eagle Produce Ltd. Partnership, 521 F.3d 1201, 1213

---

[4] Plaintiff asserts that he received less training on CORE than Filip. However, Plaintiff testified that he attended a three-day training on CORE, while Filip testified that he received two days of training. Company records indicate that Plaintiff and Filip completed the same course. Plaintiff also testified that he was never denied training. Because Plaintiff's affidavit contradicts the record, the Court will not adopt his version of the facts for purposes of ruing on a motion for summary judgment. See Scott v. Harris, 550 U.S. 372, 380 (2007).

-1214 (9th Cir. 2008) (no evidence of pretext where employer cited economic downturn and performance problems for layoffs).

At his deposition, Plaintiff testified that when he first spoke with Carney on the telephone about being laid off, he asked him "whether seniority or experience was taken into consideration." Plaintiff testified that he only recalled Carney telling him that he didn't take seniority or experience into consideration. In his affidavit, Plaintiff now claims that during the call Carney also told him that Filip's superior performance evaluations were a factor. Plaintiff's discrimination complaint and NERC statement filed in 2009, near the time of the call, make no mention of Carney saying that performance evaluations were a factor. Plaintiff's affidavit is self-serving and contradicts or embellishes his NERC statement and deposition testimony. Accordingly, it is insufficient to defeat summary judgment.

Even if performance evaluations were considered as an additional factor, this would not create an issue of fact about whether Defendant's stated reason for retaining Filip was pretext for age discrimination. Filip's performance evaluations demonstrate that he was not an incompetent or marginal employee. Filip was promoted twice while at GES. Filip had received positive performance evaluations since he joined GES. Both Filip and Plaintiff received "effective" or "highly effective" ratings on the evaluation prior to the layoff. This evaluation covered about seven months of Filip's AMS service. On this evaluation, Filip scored slightly higher than Plaintiff in every category.

Plaintiff makes unsupported or self-serving assertions that Filip was having difficulty performing in the AMS position, but fails to provide any contemporaneous evidence to that effect. Filip's promotion to the AMS position was based in part on Plaintiff's own recommendation.

Plaintiff testified that he told Carney that he "probably would have – may have done the same thing.[5]"

Plaintiff insists that because he held the AMS position longer than Filip, the "logical outcome" would have been to demote the "young, callow, recently promoted" Filip to his previous job as Field Services Coordinator.[6] However, proficiency with CORE, not years of experience, was the criteria used to determine who to lay off. To the extent that evaluations were considered, both employees had similar ratings. The wisdom of Defendant's choice is not at issue. Plaintiff's belief that he was better qualified, and that Defendant "should have" and "could have" taken an alternative course of action or used different criteria, does not create an issue of fact that the stated reasons were pretext for age discrimination.

Economic conditions forced GES to eliminate one AMS position in Las Vegas. Defendant believed that it needed an employee who would be a "champion" for the CORE system. The undisputed evidence shows that Filip, who was doing well in his job, was the AMS who was most proficient at CORE. Plaintiff has failed to show a dispute of fact from which pretext of age discrimination could be inferred. Accordingly, summary judgment is granted in favor of Defendant.

III. Conclusion

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (#21) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment in favor of Defendant.

DATED this 17th day of October 2012.

_____
Kent J. Dawson
United States District Judge

---

[5] Plaintiff explains this statement by saying that he did not believe when he made it, but instead was attempting to console Carney.

[6] Plaintiff provides no evidence that returning Filip to his previous job was an option.

9